UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>FACEBOOK USER ID:<br><br>**100002420917491; also known as www.facebook.com/markell.mellette**<br><br>**that is stored at premises controlled by Meta Platforms, Inc.** | Case No. ___6:23mj7___<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel Bailey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the user ID, including the content of the subscriber's or customer's account.

2. I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since 2017. I am also a Detective with the Lynchburg Police Department (Virginia)

1

and have been so employed since 2002. I am currently assigned to investigate drug trafficking organizations as a member of the DEA, Washington Field Division/Roanoke Resident Office. My duties as a Task Force Officer involve the investigation of various criminal activities of narcotics traffickers and their associates.  In investigating these matters, I have acted as a case agent, an undercover agent, and a contact agent for confidential sources.  These investigations have resulted in the issuance of federal search warrants, seizure warrants, indictments, and convictions of persons for federal narcotics violations.  During my employment as a law enforcement officer, I have received multiple hours of training in narcotics enforcement and investigative techniques, and I have personally participated in numerous investigations.  I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of drug traffickers, including the methods and practices used by traffickers of methamphetamine, heroin, and cocaine. I have been involved in the execution of numerous search warrants on electronic devices, including cellphones, and in obtaining location information for those devices.

   3.  The facts in this affidavit come from my own investigation, observations, training and experience, and information obtained from other law enforcement officers and witnesses, including members of the gang under investigation and their associates.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

   4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841(a)(1) were committed by the individual(s) listed herein. There is also probable cause to search the

information described in Attachment A for evidence of these crimes and contraband, or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. The United States, including the Drug Enforcement Administration ("DEA"), is conducting a criminal investigation of Markell MELLETTE ("MELLETTE") and others regarding the conspiracy to distribute cocaine and methamphetamine in violation of 21 U.S.C. § 846.

6. There is probable cause to believe that the Facebook Account, 100002420917491, further described in Attachment A ("SUBJECT ACCOUNT"), contains evidence of this activity. The SUBJECT ACCOUNT is believed to be owned by Markell MELLETTE ("MELLETTE") who is believed to be using the application to further their Drug Trafficking Organization.

7. In January 2021, law enforcement executed a search warrant on a cellular phone being used by Jermel STOREY to facilitate narcotic transactions. STOREY was identified as the leader of a Drug Trafficking Organization in which MELLETTE was involved. Analysis of the data obtained from STOREY's cellular phone determined that STOREY had a cellular phone number stored under the contact name of "Markell." That number had been identified by law enforcement as being used by MELLETTE to facilitate narcotic transactions. The text messages between MELLETTE and STOREY started in November 2020 and ended in January 2021. Those texts messages included communications indicative of narcotic transactions. STOREY sent MELLETTE, "I could do 26 for the half. 1450 a pc." This affiant knew that to mean $26,000 for 500 grams of cocaine and $1,450 per ounce of cocaine.

8. On September 9, 2022, law enforcement conducted a traffic stop on a vehicle operated by MELLETTE. The traffic stop was initiated on MELLETTE for Failing to Yield

Right-of-Way to a stationary emergency vehicle. Leonard COLEMAN ("COLEMAN") was found as a passenger of that vehicle. That traffic stop occurred in Frederick County, Virginia which is located in the Western District of Virginia. During that traffic stop, a narcotic detection K-9 alerted to the presence of the odor of narcotics coming from/about the vehicle MELLETTE was operating. A search was then conducted of that vehicle. Law enforcement located and seized approximately one thousand grams of a substance compressed into a brick shape. That substance tested positive for cocaine.

9. Further search of the vehicle yielded three cellular phones: Target Cell Phone #1, Target Cell Phone #2, and Target Cell Phone #3.

10. Both MELLETTE and COLEMAN were arrested and charged with narcotic trafficking offenses in Frederick County, Virginia.

11. This affiant later took possession of Target Cell Phone #1, #2, and #3 and secured them at the Lynchburg Police Department, marking them as Item 2, Item 3, and Item 4 under Lynchburg Police case number 2022-011790 for safe keeping.

12. This affiant obtained a federal search warrant (622MJ11) authorizing the search of the aforementioned cellular devices.

13. This affiant conducted an analysis of the data obtained from Item 3 and determined that the Apple ID associated with Item 3 was markellemellette@gmail.com. This affiant also determined that the cellular number associated with the device was 19179818270.

14. Law enforcement had previously served an Administrative Subpoena on the service provider for 19179818270 and determined the subscriber of the account was MELLETTE.

15. Further analysis of the data obtained from the Item 3, determined that MELLETTE had a Facebook Messenger account. This affiant determined that the account number associated with the account was 100002420917491 (SUBJECT ACCOUNT).

16. This affiant conducted an OPEN SOURCE search of the SUBJECT ACCOUNT and found multiple "selfie" photographs of MELLETTE posted to the account.

17. This affiant found a text message exchange between a co-conspirator (hereafter "CC-1") of this investigation. That message exchange began in April of 2022. That message exchange consisted of CC-1 providing MELLETTE quotes for prices of narcotics. On one instance, CC-1 texted a photograph of a bag of suspected fentanyl pills to MELLETTE.

18. In addition, CC-1 identified CC-1's narcotic source of supply by name (herein referred to a "CC-2"). CC-1 specifically wrote MELLETTE that CC-2 was a "plug emoji". This affiant knows that a "plug" is street slang for source of supply. CC-1 provided MELLETTE a screenshot of CC-2's Facebook account page and instructed MELLETTE to contact CC-2 via Facebook Messenger. CC-1 advised that CC-2 and MELLETTE could "talk numbers" and that CC-2 could "send u whatever". MELLETTE later responded to CC-1, "He told me 27 I said try again I'm at 21-23 in NYC." NOTE: This affiant knew that to be slang for the price of a kilogram of cocaine.

19. This affiant conducted another OPEN SOURCE search of MELLETTE's Facebook account determined that MELLETTE was a "friend" of CC-2's Facebook account.

20. On December 16, 2022, this affiant subject a preservation request to Facebook requesting the preservation of all data associated with the SUBJECT ACCOUNT.

21. This affiant believes, based on the above-mentioned facts, there is probable cause to believe the SUBJECT ACCOUNT contains evidence of MELLETTE's criminal activity and

with further identify MELLETTE's association with CC-2, a suspected source of supply of narcotics, and others both identified and not identified in this Drug Trafficking Organization.

## BACKGROUND CONCERNING FACEBOOK[1]

22. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

23. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

24. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

---

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

28. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

29. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

31. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

33. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

34. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user

accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

35. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

36. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

37. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can

indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

40. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

41. Based on the foregoing, I request that the Court issue the proposed search warrant.

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

43. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Daniel Bailey*

                        Daniel Bailey, Task Force Officer
                        Drug Enforcement Administration

Received by reliable electronic means and sworn and attested to by telephone on this  12th day of January 2023.

*Robert S. Ballou*
_____
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE